IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD D. PARKELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 10-412-SLR |
| | ) |
| CARL DANBERG, et al., | ) |
| | ) |
| Defendants. | ) |

Donald D. Parkell, Howard R. Young Correctional Institution, Wilmington, Delaware, Pro Se Plaintiff.

Devera Breeding Scott, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for State Defendants.

Chad J. Toms, Esquire, Whiteford, Taylor & Preston, L.L.C., Wilmington, Delaware. Counsel for Correctional Medical Services, Inc., Christina Damron, and Betty Bryant.

Daniel A. Griffith, Esquire, Whiteford, Taylor & Preston, L.L.C., Wilmington, Delaware. Counsel for Correct Care Services LLC.

**MEMORANDUM OPINION**

Dated: July 3, 2012
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Donald D. Parkell ("plaintiff"), a prisoner incarcerated at the Howard R. Young Correctional Institution, Wilmington, Delaware, filed his complaint pursuant to 42 U.S.C. § 1983. He proceeds pro se and has been granted leave to proceed without prepayment of fees. Presently before the court is a motion to dismiss pursuant to Fed. R. Civ. P.12(b)(6) filed by Correctional Medical Services, Inc., Christina Damron, and Betty Bryant. (D.I. 131) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons discussed, the court will grant in part and deny in part defendants' motion to dismiss.

## II. BACKGROUND

The court screened the original complaint pursuant to 28 U.S.C. § 1915 and § 1915A, dismissed some claims and allowed plaintiff to proceed against numerous defendants including Correctional Medical Services, Inc. ("CMS"), Betty Bryant ("Bryant"), and Chris Damron ("Damron").[1] (D.I. 8) Plaintiff moved for, and was granted, leave to amend. (D.I. 37, 64) The court ordered plaintiff to file his amended complaint on or before June 30, 2011. Plaintiff filed an amended complaint on May 25, 2011. (D.I. 66) The amended complaint added defendants as well as medical needs and due process claims. (D.I. 66) The amended complaint in the Statement of Facts states, "[t]he plaintiff fully incorporates his initial complaint and all filed documents as if

---

[1] CMS, Bryant and Damron now move for dismissal, despite this court's determination following the initial screening that allowed plaintiff to proceed with his claims against them.

stated entirely herein." (*Id.* at ¶ 18) The case proceeds on the complaint (D.I. 2) and amended complaint (D.I. 66), together, as the operative pleading.[2] (*See* D.I. 121)

CMS, Damron, and Bryant (collectively "medical defendants") move to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff opposes the motion.

## III. STANDARD OF REVIEW

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted).

---

[2]The amended complaint contains few, if any, allegations against Damron and Bryant. They argue that, because the amended complaint supersedes the original complaint, it effectively invalidates the original complaint and, hence, they should be dismissed as defendants. Defendants' position fails to consider this court's ruling that the complaint and amended complaint, together, serve as the operative pleading. (*See* D.I. 121) The court, therefore, will deny dismissal on this ground.

2

A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Furthermore, "[w]hen there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

### A. Plaintiff's Claims

Plaintiff raises issues regarding delay and denial of medical care, as well as unlawful conditions of confinement claims. This memorandum opinion discusses only the claims as alleged against the moving defendants. Plaintiff was housed at the James T. Vaughn Correctional Center and on January 1, 2009, slipped in running water and fell. Medical was called and carried plaintiff on a stretcher to the nurse's station. He was taken to the Kent General Hospital where he received medical care. Upon his discharge, plaintiff returned to the prison infirmary where he remained for approximately one week. His cell there had little, to no, heat and, because his Security Housing Unit ("SHU") status forbade anyone from entering his cell to treat him, he was required to crawl to the door and "stick his arm out of a small opening to receive treatment, vital-sign checks and medication." Plaintiff alleges that he was refused medication and ice to

3

reduce the swelling. While in the infirmary, plaintiff was prescribed range-of-motion exercises. He alleges that Damron, who was assigned to provide him physical therapy, manhandled his injured extremity. (D.I. 2, ¶ 42) Plaintiff alleges that Bryant would not provide medical care even after plaintiff complained of an arm infection. (*Id.* at ¶ 45) A few days later officers observed plaintiff's swollen and infected arm and notified the physician on duty who scheduled an emergency procedure and ordered medication.

On January 19, 2009, plaintiff underwent a medical procedure at the nurse's station, a culture was obtained, and it revealed a staphylococcus infection. Plaintiff was treated in February and, in March, underwent testing on his forearm nerves. In August 2009, he was ordered to begin physical therapy. On November 4, 2009, plaintiff returned to isolation to complete "back-up time" for disciplinary misconduct that had occurred in June 2009. Plaintiff sought medical care while in isolation when his arm again became infected. He was told by nurses and correctional officers that, while housed in isolation, he was not allowed medical treatment for any reason but, upon release from isolation, he could submit a sick-call request. After a few days in isolation, he was seen by a mental health worker and they discussed his infected arm. The mental health worker placed a telephone call and, later that evening, plaintiff was taken to the infirmary where he was treated and received medication. Plaintiff underwent a second medical procedure on December 4, 2009. As of March 2010, he had received physical therapy only three times. Plaintiff was informed by the physical therapist that the delay in starting physical therapy caused the injury to heal incorrectly and that plaintiff required an MRI. (D.I. 2)

Count one alleges that plaintiff's rights under the Eighth Amendment to the United States Constitution were violated when: (1) Bryant refused to examine his infected arm and to provide needed treatment (*Id.* at ¶ 66); (2) Damron maliciously twisted and yanked his arm through the door slot causing immense pain and contributing to his preexisting condition (*Id.* at ¶ 67); and (3) CMS enacted policies, customs, or practices that violated his constitutional rights including: (a) the denial of medical treatment while plaintiff was housed in isolation; (b) forbidding medical personnel to enter his cell to provide medical care regardless of the extent of his injury; (c) refusing to provide ice for swelling and pain, even though it was readily available; (d) housing plaintiff in a cell in the infirmary with no heat, no extra clothing or linens; (e) delaying needed medical testing; (f) encouraging its employees to disregard complaints from inmates with higher security levels who were housed in the infirmary; (g) allowing nurses to deny and delay medical care to inmates with higher security levels; and (f) only providing care after plaintiff submitted numerous complaints and grievances. (D.I. 2, ¶ 76; D.I. 66, ¶¶ 68-72). Count two alleges that CMS violated plaintiff's rights under the Fourteenth Amendment to the United States Constitution by refusing to treat him while he was housed in isolation and in housing him in atypical conditions in the infirmary.

### B. Medical Needs

Medical defendants argue that, rather than stating an actionable claim for deliberate indifference to a medical need, plaintiff alleges his medical providers failed to provide his desired level of medical care. They further argue that plaintiff has not

established a serious medical need and that, at no time, was plaintiff denied medically necessary treatment.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (not published) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000)) .An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986)

(negligence is not compensable as a Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

In addition, when a plaintiff relies upon a theory of respondeat superior to hold a corporation such as CMS liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that CMS is directly liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

The allegations against Bryant refer to an obvious medical condition, assert that Bryant refused to examine plaintiff, ignored plaintiff's complaints of an infected arm, and refused to administer even an aspirin. Over the next few days, the condition worsened, and correctional officers notified the on-duty physician regarding plaintiff's condition. Approximately one week following his visit with Bryant, a physician performed a medical procedure on plaintiff's infected elbow.

With regard to the allegations against CMS, plaintiff has alleged that it had numerous policies, customs, or practices of refusing to treat plaintiff, particularly when housed in isolation. Other notable alleged policies include that CMS encouraged its

7

employees to disregard medical complaints of inmates with higher security classification and delayed medical treatment by forcing plaintiff to file grievances and follow through with the grievance process before providing medically ordered treatment. Liberally construing plaintiff's allegations, as the court must, the court concludes that plaintiff has adequately alleged § 1983 claims against Bryant and CMS sufficient to survive a motion to dismiss.

In his response, plaintiff indicates that he asserts not a medical needs claim, but an assault and battery claim against Damron. (*See* D.I. 137 at 4) Therefore, the court will deny the motion to dismiss the medical needs claims raised against Bryant and CMS and will grant the motion to dismiss as to any potential medical needs claim asserted against Damron.[3]

### C. Medical Negligence

Medical defendants move to dismiss any asserted state law medical negligence claims to the extent they are asserted by plaintiff. In Delaware, medical malpractice is governed by the Delaware Health Care Negligence Insurance and Litigation Act. 18 Del. C. §§ 6801-6865. When a party alleges medical negligence, Delaware law requires the party to produce an affidavit of merit with expert medical testimony detailing: (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury. *Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (quoting *Green v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001)) (internal quotations omitted); 18 Del. C. § 6853.

---

[3]At this juncture, the supplemental assault and battery claim against Damron remains viable.

8

To the extent plaintiff alleges medical negligence, he was required to submit an affidavit of merit as to each defendant signed by an expert witness; yet he has failed to do so. 18 Del. C. § 6853(a)(1). Therefore, the court will grant the motion to dismiss medical negligence claims.

### D. Due Process

Plaintiff raises a due process claim against CMS, alleging he was subjected to conditions significantly worse than other inmates under similar circumstances. More particularly, he alleges that, because of his security classification, CMS refused to treat him while housed in isolation, and refused to enter his cell to provide treatment while he was housed in the infirmary. Medical defendants move for dismissal on the grounds that plaintiff has failed to allege the deprivation of a liberty interest sufficient to warrant due process protection.

In deciding whether a protected liberty interest exists, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *See Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003) (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). Absent a protected interest, substantive due process is not implicated. A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court recognized that, under certain circumstances, states may create liberty interests protected by the Fourteenth Amendment due process clause. In the prison context presented by this case, "these interests will be generally limited to freedom from restraint which . . . while not exceeding the sentence in such an

unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

The court liberally construes plaintiff's claims as alleging that CMS deprived him of a liberty interest in his health and safety. As to the facts alleged in the instant case, the court considers the alleged denial of necessary medical treatment, based upon a housing assignment or security classification, an atypical and significant hardship in relation to the ordinary incidents of prison life. *See e.g., Cooleen v. Lamanna*, 248 F. App'x 357 (Sept. 14, 2007) (not published) (finding that an inmate cannot show the violation of a constitutionally protected liberty interest when he *received* medical treatment) (court's italics); *see also Leamer v. Fauver*, 288 F.3d 532, 545 (3d Cir. 2002) (denial of the right to participate in a sex offender treatment program that was "mandated and promised" by New Jersey law implicated a protected liberty interest). Therefore, the court will deny the motion to dismiss the due process claims against CMS.

## V. CONCLUSION

For the reasons discussed above, the court will grant in part and deny in part defendants' motion to dismiss. (D.I. 131)

An appropriate order will be entered.